# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HARLAN P. JAMES,<br><br>Defendant. | NO. CR 05-410-RSL<br><br><br>SUMMARY REPORT OF<br>U.S. MAGISTRATE JUDGE AS<br>TO ALLEGED VIOLATIONS<br>OF SUPERVISED RELEASE |

An evidentiary hearing on a petition for violation of supervised release was held before the undersigned Magistrate Judge on July 28, 2009. The United States was represented by Assistant United States Attorney Carl Blackstone, and the defendant by Assistant Federal Public Defender Michael Filipovic. The proceedings were digitally recorded.

The defendant had been charged and convicted of Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §113(a)(6). On or about November 16, 2006, defendant was sentenced by the Honorable Robert S. Lasnik to a term of probation for five years. Dkt. No. 40.

The conditions of supervised release included the standard conditions that the defendant comply with all local, state, and federal laws, and that he not associate with a person engaged in criminal activity or with felons. Special conditions imposed included, but were not

SUMMARY REPORT OF U.S. MAGISTRATE
JUDGE AS TO ALLEGED VIOLATIONS OF
SUPERVISED RELEASE - 1

1  limited to, substance abuse program, to include testing to determine if the defendant has
2  reverted to the use of drugs or alcohol. *Id.*

Defendant has had previous violations of his supervision. In February 2007, the defendant was associating with a person engaged in criminal activity when the driver of the vehicle he was riding in, was arrested for DUI. When the violation was reported, U.S. Probation Officer Jerrod Akins recommended no action be taken and the Court followed. Dkt. No. 41. In May 2007, defendant and two others were arrested by the Bellingham police during an altercation outside a local bar. Dkt. No. 44. The reporting officers smelled alcohol on their breaths and a subsequent search of their vehicle revealed numerous rocks of cocaine that belonged to defendant's cousin, Calvin James. Dkt. No. 44. The Court found that defendant violated the conditions of his release by having contact with two convicted felons and associating with a person engaged in criminal activity. Dkt. No. 46. On July 26, 2007, the defendant was sentenced to 180 days of electronic home montioring. Dkt. No. 53.

In a Petition for Warrant or Summons, dated May 14, 2009, U.S. Probation Officer Jerrod Akins asserted the following violations by defendant of the conditions of his supervised release:

(1) Possessing and distributing cocaine, in violation of standard condition No. 7.

(2) Failing to report as instructed on March 18, 2009, and March 19, 2009, in violation of the special condition that he participate as instructed by the U.S. Probation Officer in a program approved by the probation office for treatment of narcotic addiction, drug dependency, or substance abuse, which may include testing.

On May 21, 2009, defendant made his initial appearance. Dkt. No. 56. He was advised of his rights, and entered denials to the violations charged. On June 9, the Court ordered that the following supplemental alleged violations be incorporated into the initial petition:

(3) Possessing and distributing cocaine from April 2008 through May 2008, in violation of the general condition that he not commit another federal, state, or local crime.

(4) Associating with a person engaged in criminal activity from April 2008 through May 2008, in violation of standard condition number 9.

(5) Associating with Ronald Phair, Jr., a convicted felon, without permission from the United States Probation Officer, in violation of standard condition number 9.

On July 28, 2009 defendant made his initial appearance on the supplemental violations, entered denials and then proceeded to an evidentiary hearing on all violations. At the outset, the undersigned specifically inquired as to whether this matter should proceed before a magistrate judge, because it appeared to involve substantial credibility determinations. All parties expressed their willingness to proceed.

Four witnesses testified. The first three who testified, Ms. Marilyn Scott, Detective Roland Coberly, and United States Probation Officer Jerrod Akins, were called by the government. The defendant also testified. Exhibits 1-9 were received into evidence without objection, although exhibits 6 and 7 were received for purposes of chain of custody only. After hearing the witnesses, their demeanor and assessing their credibility, the exhibits proffered and argument of counsel, I recommend the Court find the defendant to have committed violations 1 through and including 5 as alleged, and that the Court conduct a hearing limited to the issue of disposition.

There are two essential questions that encompass the violations. First, did defendant engage in possessing and distributing cocaine? This question incorporates alleged violations 1, 3, 4, and 5. Second, did defendant fail to appear for drug testing as directed? This question incorporates alleged violation 2.

1. <u>Utilizing a preponderance of the evidence standard, defendant engaged in possessing and distributing cocaine.</u>

Defendant denies that he had any involvement with the possession or distribution of cocaine. The primary witness for the government was Ms. Marilyn Scott. Ms. Scott lives in a house on the Lummi reservation on Scott Road. She testified that she engaged in a series of crack cocaine purchases from defendant. She has an addiction to crack cocaine and oxycontin. She testified that she only used occasionally prior to 2008, although her testimony had several inconsistencies with statements she gave in a prior interview with defense counsel, including her claim that she had been clean for six months prior to April 2008.

Ms. Scott has been convicted in the Lummi Tribal Court of Delivery of Illegal Substance and Conspiracy to Deliver an Illegal Substance for Value. She was sentenced to 1460 days in jail, with 1190 days suspended. In addition, she was to receive a reduction of 90 days for her testimony against defendant, and a reduction of 180 days for providing information as required in her plea agreement. Ex. 5.

Ms. Scott testified that defendant was the source for her crack cocaine. She testified that in April 2008, she called her friend Violet Perkins looking for drugs. Ms. Scott then went to Violet's home where Violet introduced her to the defendant. Ms. Scott gave $60 to defendant and received 3 "stones" (crack cocaine). Ms. Scott used the stones and testified that they got her high.

During the next month, she called defendant regularly for crack cocaine. Ms. Scott testified that she became the "middleman" between defendant and her friends who wanted drugs. On May 1, 2008, an unidentified confidential informant ("CI") approached Ms. Scott with $100 given to him/her under the direction of Detective Coberly to purchase crack cocaine. Ms. Scott took the $100 and called defendant. Defendant subsequently arrived at Ms. Scott's house in a grey van driven by Ronald Phair, a convicted felon. In the driveway of Ms. Scott's home, Ms. Scott and defendant, who was sitting in the backseat of the van, engaged in a drug transaction where she handed the $100 to defendant, and in return, received about 12-13

"stones." She kept a couple of "stones" for herself, and delivered the remainder to the CI. Ms. Scott also testified that after the transaction occurred, she noticed more people pulling into her driveway as she was entering her home and witnessed the defendant selling drugs to them.

Although these transactions happened frequently during April and the early part of May, her last transaction with defendant was May 9, 2008. She lost her son on May 8, 2008. Ms. Scott testified that she engaged in numerous transactions in her driveway with defendant, including the May 1, 2008 transaction involving the CI discussed above. She estimated that in one day alone, she and the defendant had engaged in 8 different drug transactions in her driveway. She also testified that she engaged in multiple drug transactions with both the defendant and his brother, Patrick James, at Patrick's house. Patrick James was arrested and pled guilty to charges stemming from the sale of crack cocaine.

Ms. Scott's testimony was corroborated in part by Detective Coberly. He is assigned to the Lummi Tribe drug enforcement authority. He was aware of heavy drug trafficking taking place at Ms. Scott's residence. Ms. Scott became a target for investigation. On May 1, 2008, he sent in his unidentified CI to purchase drugs at the Scott residence. As noted above, the target of the investigation was not the defendant. Instead, it was Ms. Scott. No photos were taken but the CI wore a recording device. Although Detective Coberly testified that he did not hear defendant's voice on the recording, did not see Ronald Phair or a grey van or defendant at Ms. Scott's residence that day, he has seen defendant present at Ms. Scott's residence before.

The drugs purchased during the May 1, 2008 transaction were booked into evidence, and an analysis of the drugs showed the purchase to be crack cocaine. Exs. 6, 7. Detective Coberly testified that he delayed further follow-up and testing because he was aware that defendant was under supervision and did not want a premature disclosure of a defendant under supervision to interfere with on-going tribal investigations using the same CI. He knew if he reported it to defendant's Probation Officer, this would have to be reported immediately to the sentencing judge. Accordingly, he delayed testing the drugs purchased using the CI until a

later point in time.  United States Probation Officer Akins confirmed that had he received a credible report of drug dealing earlier, he would be required to file an immediate report with the sentencing judge, and could not wait for an investigation to be completed before informing the Court.

Officer Akins also testified that due both initially and due to prior violations, defendant was aware that he had to make sure that anyone he associated with could not be a felon.  He was previously violated on this issue.  Dkt. No. 41.  Office Akin also testified that Ronald Phair, the person Ms. Scott testified was driving the van for the cocaine deliveries, was a convicted felon.

Defendant testified too.  Defendant denied selling drugs to Ms. Scott, denied using drugs with Ms. Scott, denied being present when drugs were sold, and denied any contact with Ronald Phair and his brother Patrick James since he was placed on supervision.  Both Ms. Scott and the defendant have credibility problems.  However, the defendant's inconsistencies were more obvious.

One notable inconsistency was defendant's vague testimony regarding his visits to Ms. Scott's house.  Some of this is due, undoubtedly, to the delay in bringing the charge.  However, it cannot all be explained away to delay.  Initially when he was asked, he said he had only been to Ms. Scott's house in 2007, to visit with Paul Scott.  Then, he acknowledged that since 2006, he might have been there a "few more times – more than 1 time, maybe 4 times."  He said he went to see Paul Scott at the Scott residence to try to sell him some of defendant's hip-hop CDs.  He claimed that he never saw Ms. Scott there and did not know she lived there. Defendant denied that Ronald Phair or Patrick James gave him rides to Ms. Scott's house but was unable to recall exactly who gave him rides there.

Another notable inconsistency in defendant's testimony was that he denied ever being in the presence of anyone who possessed drugs since 2006.  However, defendant was sentenced to 180 days of electronic home monitoring in July 2007 for violating the terms of his

1  supervision for associating with a person engaged in criminal activity. That criminal activity
2  involved crack cocaine. During cross examination, defendant was asked by Assistant U.S.
3  Attorney Blackstone if he recalled that incident. Defendant stated he had no knowledge his
4  cousin had drugs, nor did he see the mint container in which the drugs were contained in.
5  Defendant elaborated further and contradicted himself when he stated that he did hear that his
6  cousin had drugs but that he did not know if the rocks of cocaine were "truly drugs" since they
7  were not tested and he was not a chemist.

8  There were also other less notable signs showing defendant's lack of credibility.
9  Defendant had trouble recalling his cell phone number that he provided to Probation Services
10 even though he has had the number since 2007 or 2008, he couldn't remember. When asked
11 on cross if he ever saw alcohol at his father's house, defendant initially said "no," but when
12 asked again he testified that he had. Defendant also denied any contact with his brother Patrick
13 James since he was placed on probation in 2006, but minutes later, testified that he sees Patrick
14 James at the fitness center.

15 Although defendant and Ms. Scott provided contradicting testimonies and both have
16 credibility issues, Ms. Scott has a stronger incentive to tell the truth than the defendant. If the
17 Court finds that defendant did in fact possess and distribute crack cocaine, he will be facing at
18 least two years in prison. Dkt. No. 31 at 4. Ms. Scott, on the other hand, had her 1460 day
19 sentence (1190 suspended) reduced to a total of 270 days for testifying against defendant. Exh.
20 4. However, if Ms. Scott is found to have testified untruthfully, her agreement will be revoked
21 and she will have to serve 540 days in jail. While defendant only has an incentive to stay out
22 of prison, Ms. Scott has an incentive to be truthful in order to comply with her plea deal.

23 ///
24 ///
25 ///
26 ///

2. <u>Defendant failed to report as instructed on March 18, 2009, and March 19, 2009, in violation of the special condition that he participate as instructed by the U.S. Probation Officer in a program approved by the probation office for treatment of narcotic addiction, drug dependency, or substance abuse, which may include testing.</u>

Officer Akin testified that on March 17, 2009, he called defendant's cell phone to report for drug testing. No one answered the phone and defendant was left a message to appear for a drug test on March 18, 2009. He did not show up nor did he call back. On March 18, 2009, a urinalysis technician called defendant at the same number. Again, no one answered the phone, but this time, there was no way to leave a message. The technician then emailed defendant instructing him to appear for drug testing on March 19, 2009. The email was sent to defendant's email address listed on his monthly reports. He did not show up. Officer Akin testified that defendant did not appear for drug testing until May 22, 2009.

The defendant did fail to report as instructed on March 18, 2009 and March 19, 2009. This finding is based on several reasons. First, defendant testified that his phone "may" have been out of minutes during the period of March 2008 until May 2008 because of financial difficulties. Defendant testified that when his phone did not have minutes, callers were unable to leave a voice message. Officer Akin testified that he was able to leave a voice message. Second, defendant testified that he had access to his father's cell phone during this period. Defendant, however, did not use his father's cell phone to contact Officer Akins to report that his cell phone number was currently unavailable. This point is noteworthy considering defendant has been on probation since 2006 and was therefore, aware of his required reporting duties and that voice messages were the primary way random testers were contacted. Third, Officer Akin testified that two weeks after defendant failed to appear as instructed for drug testing, Officer Akin went to defendant's residence and spoke with defendant's father. Officer Akin told defendant's father to tell defendant to report to probation services. Defendant never contacted Officer Akin. In fact, defendant's eventual appearance for drug testing on May 22, 2009 occurred only after a warrant for his arrest was executed. Dkt. Nos. 54, 59. Lastly,

defendant testified that he had an email account and had access to that email account during the period of March 2008 – May 2008. Defendant testified that he did not check his email account during this period and that he rarely checked this email account. However, because defendant reported this email address on his monthly reports as a current or alternative way to contact him, defendant is responsible for checking this email account in a reasonable manner.

I therefore recommend that the Court find the defendant to have violated the terms and conditions of his supervised release as to violations 1, 2, 3, 4, and 5 and that the Court conduct a hearing limited to disposition. A disposition hearing on these violations has not yet been scheduled.

Pending a final determination by the Court, the defendant remains at liberty subject to supervision by the United States Probation Office.

DATED this 13th day of August, 2009.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge

cc:  District Judge:          Honorable Robert S. Lasnik
     AUSA:                    Mr. Carl Blackstone
     Defendant's attorney:    Mr. Michael Filipovic
     Probation officer:       Mr. Jerrod Akins

SUMMARY REPORT OF U.S. MAGISTRATE
JUDGE AS TO ALLEGED VIOLATIONS OF
SUPERVISED RELEASE - 9